The final case for argument is 25-2563, District of Minnesota, Asli Jama v. Berkshire Hathaway Homestate Ins. All right. Good morning. Good morning. Mr. Brandingham, we'll hear from you when you're ready. Counsel, Your Honors, I represent Asli Jama in this matter. Under Minnesota Statute 65B46, Subdivision 1, it says that if an accident causing injury occurs in the State of Minnesota, every person suffering from a loss, injury arising out of the maintenance or use of a motor vehicle, or as a result of being struck as a pedestrian by a motorcycle, has a right of basic economic loss benefits. Under 65B43, Subdivision 3, which are definitions, the statute describes maintenance or use. It says maintenance or use of a motor vehicle means maintenance or use of a motor vehicle as a vehicle including incident to its maintenance or use as a vehicle occupying, entering into, and alighting from it. So that's kind of the basic background statutory foundation for how the no-fault insurance works. The term use is kind of ambiguous. So then in the Doherty case that I cite in my material, the Supreme Court of Minnesota describes how you apply the term use under 65B46, and the court references that statute in their decision. The court held that there was a requisite casual connection between Ms. Doherty and the use of her vehicle because her injuries arose as the natural and reasonable incident or consequence of the use of her vehicle. In this case, the district court has dismissed Ms. Jama's claims, and the court went through this analysis with me. But if you look at the order from the court, the court's not arguing or the court's not finding that Ms. Jama wasn't using her vehicle at the time of the loss. The district court says that Ms. Jama's case is distinguishable from Doherty, where they describe how use affects whether or not coverage applies, because Ms. Jama was not an insured. So because Ms. Jama was not an insured, like Ms. Doherty was, then Ms. Jama had to show both use and occupancy. So this is from the district court's order. The implied premise of Ms. Jama's argument is that under the uninsured motorist provision of Minnesota's no-fault statute, any person using or maintaining a motor vehicle is an insured. Doherty, however, does not extend quite so far. The statutory language on its face applies only to insured as defined in the relevant policy. So that's the crux of the dispute here. It's our position that the statute only requires maintenance or use, not occupancy. If you look at Doherty's case... You mean whether or not the person is insured if they're using the vehicle, they're entitled to coverage? Correct. If you're using the vehicle, you're entitled to coverage whether or not you're insured. That's how Minnesota law works. And that's the statute I just read to you, 65B46 Subdivision 1. It says the words they use is every person suffering from an injury arising out of the maintenance or use of a vehicle is covered, irrespective of whether you're insured or not. The district court also says there's no fact dispute. But when they're talking about what's in dispute, they're talking about occupancy. But the facts that is key here is whether or not she was using the vehicle at the time of the loss. And the court doesn't dispute that she was using the vehicle. I'm sorry. Can you run through one more time why it is you think? Is it the statute that you're pointing us to here that's the basis of the argument that you need not be insured under the terms of the policy? Correct, Your Honor. Okay. And even if you look at their language in their policy itself, in defendant's policy, it says if you're occupying the vehicle, you're insured. You're covered if you're occupying. If you look at the 65B43 subdivision 3 I was talking about, it says maintenance and use is under that umbrella. Occupancy is part of maintenance and use. Now, I don't know why the policy that they have doesn't, you know, quote the language about maintenance and use. But maintenance and use is a term of art that came in with the No-Fault Act. So prior to the No-Fault Act, then mainly you just looked at occupancy. Is the person physically in the car? But after the No-Fault Act, which basically said let's try to get everything that's MVA-related, car accident-related, under the umbrella of PIP coverage, then you can see this more expansive effort by the court then to include things like the facts in Doherty where she wasn't in the car, obviously. The lady had walked away from the car. She was drunk. She fell down because of ice. She was 330 feet away from the car. And then the court said she still gets the coverage through the car because she's still using the car. Now, it's our position that— Doherty was an insured person under the policy, right? Right. But again— Are you saying here that this policy is somehow invalid because it doesn't conform to the statute? Or how would we order the insurance company to pay if the person isn't covered under the policy? Anybody who is using the vehicle is covered under a policy in Minnesota. So if you look at— You mean by operation of law, whether the policy says so or not? Correct, Your Honor. Is that what you're asking us to say? Yep. Is there any Minnesota case that says something like that? Or would this be a new proposition? No, no. This is— If I borrowed your car and I'm driving your car and there's a car accident, I'm covered under your policy. Even though I'm not a named insured under your policy, your policy covers me. That's just— What's the best Minnesota case on that point? Is there one? Well, it's just sort of black and white in the statute. So I don't think—I can't think of a case where someone disputed how that statute would apply. The fact scenario I just gave you. There's a priority scheme. If I'm driving your car and somebody hits me while I'm driving your car, then I would go through my own insurance, my own personal auto insurance first. But if I don't have my own insurance, then I go through the car that I'm in. So that's—and then if you look at Statute 65B-47, it talks about if it's a business vehicle, that becomes the number one priority. And then if the business vehicle has no coverage, then you go through your personal auto because the legislature wanted to shift the cost of doing business onto business vehicles. So under— Back to Judge Colleton's question, though. Are there any Minnesota cases that would apply this provision to someone who is not insured at all under the policy? Well, if I may, Your Honor, I'm looking at page 347, and this is their language in their policy, in the defendant's policy. It says, a partnership, limited liability company, corporation, or any other form of organization, then the following are insured. And then it says, anyone occupying a covered auto or a temporary substitute for a covered auto. So that's kind of basic language or standard language. Anybody—there's no dispute from the other side that if my client would have been occupying the vehicle, he would have been insured. I'm saying that it's not just occupying that allows you to be covered in Minnesota pursuant to the statute. If you're maintaining or using the vehicle, occupying is just one element under maintenance and use. So if you're maintaining or using the vehicle, then you're covered, whether or not you're insured or not. Now, they're saying—their big argument is if it's a business vehicle. This is their argument. If it's a business vehicle, then the standard changes. And you don't have to—it's not just occupy, you have to show use and occupy. So it's like a higher burden if it's a business vehicle. Okay. Well, your time has expired. We'll let them state their argument and see how it goes. Thank you. Thank you, Your Honor.  Ms. Hannon, we'll hear from you. Good morning, Chief Judge, judges of the panel. My name is Hillary Hannon, and I represent Berkshire Hathaway Home State Insurance Company in this matter. This case turns on a single dispositive issue. In this case, Ms. Jama was not uninsured under the policy because she was not occupying the covered automobile at the time of the accident. Just in answer to Your Honor's sort of questions most recently, I would like to point you all to two cases that were post the no-fault statute, so I do think are good law and applicable here, wherein a very similar type of fact scenario was decided. So the first is Geiser, G-I-E-S-E-R. It's cited in the briefs, but it's 484 Northwest 2nd, 256. It's from 1992, Minnesota Court of Appeals. In that case, it was a police officer who was 30 to 150 feet. I think the factual record was somewhat broad there about where exactly that individual was, but they found that he was not occupying the vehicle in that case, and therefore didn't qualify as an insured. In addition, Allied Mutual is a 1996 case from the Minnesota Supremes. It's 552 Northwest 2nd, 561. Again, it's just a similar application, and that's also cited in our briefs. Did those cases discuss the no-fault statute at all? I know for a fact Geiser did, and I think the framing that Appellant is using here is just not maybe the most helpful way of doing it. It confuses the issues, to say. Well, he's saying it doesn't matter whether we're occupying and whether we're insured, because under the statute, as long as we're using the vehicle, we're entitled to benefits. What's the answer to that? I don't think that's the case. I think that in this situation, there is a policy that clearly lays out who isn't insured, and it is if you are occupying the vehicle. The example that opposing counsel brought up is if I borrow your vehicle and I'm driving it, then you would be an insured under that policy. I can't think of a policy that would not qualify that driver as an insured under that policy. It's not essentially a good one-to-one example. There's the extensive argument in this case about the facts, whether there was disputed facts in the record. I didn't hear counsel hit on that in oral argument today, but we can go into that if you're interested. But I do think that the policy language is not ambiguous. It uses the word occupying, and then it goes forward and defines occupying. And they use upon, getting in, on, out, or off. And the facts of the situation is just simply that, well, Ms. Jama may have been using the vehicle earlier in the day and may have been planning to use it later in the day. In the time in which she was injured, she was just unfortunately not using the vehicle. In order to extend the statute or the application of the statute in the way that Appellant is asking, it would so broaden the field of insurance that there would be, you know, extensive ramifications within the industry and within kind of coverage and things is my supposition. And I guess what he's arguing is that the no-fault statute trumps the policy. And I don't think that's the case. And I believe, Your Honor, that there has been other cases that have been decided that say we decline to extend that. And actually even Judge Bryan noted that in his order in specifically when he highlighted, I believe it was allied, which is another case, Your Honor, that's that allied mutual. In that case, it specifically noted the difference between what a insured can be defined as by an insurance policy and what the no-fault statute includes. And so I think the things that distinguish it here is that she was not using the vehicle at the time. I mean, so I think one of the ways that we noted in our, we have briefed it, is that even if, Your Honors, proceed to kind of assess the causation framework and we go to the Doherty case, which is highlighted by Appellant, that even requires a higher connection between the use of the vehicle and, like in this case, Ms. Jama. Here, the van doesn't play any causal role. In Doherty, her vehicle is stuck and she is in a place where then she moves, sorry, the victim in that case or the injured person in that case, she moves forward through this cold, wintry landscape because of the inability to use that vehicle. Here, it's parked normally. There's no mechanical issue. There's no other hazard in place. She's simply leaving a market and going across the street to eventually then use her vehicle. And the record is such that, you know, she could have been crossing the street for any reason. Perhaps she was going to go to another store before she even went to the vehicle. You know, she's not, the facts are not that she was getting into, that she was driving. All of the things that would normally be covered. This is just a situation where, unfortunately, there's a gap in insurance coverage. If we're walking down the road, you know, and we're leaving our house, say part of the house falls down, right, we might be covered by our homeowner's insurance. You know, we get in our vehicle, we might be covered by our auto insurance. But there's other parts of life that we're moving about the world and we just simply don't have insurance coverage. And unfortunately, I don't believe that the courts should extend this to a place where then, you know, anyone sort of anywhere near the vicinity of a vehicle or planning to use a vehicle would then be covered by that policy. And I think, actually, an example would be that it was Short that was a tow truck driver. And I believe that it was in that case that the court even talked about, you know, we can't extend this to a certain amount of space surrounding a vehicle, right, that they even contemplated, right? Should we say that if you're within 10 feet of the vehicle or if you're within 2 feet of the vehicle, right, and the court had said, no, we really can't even do that because that would create just this cascading ramifications for insurance policies. I'll just hit briefly on this, but the fact of Judge Bryan deciding to grant summary judgment in this case when there was arguments by appellant that there is factual disputes, obviously Berkshire notes that the record objectively shows that there is not a question of fact. The only dispute of facts come from the testimony of Ms. Jama herself, and even her testimony or her statements that would be used in their arguments, they're internally inconsistent, unfortunately. You know, she says, I think at one point I was slid underneath the vehicle or I was getting into the vehicle. But in this case, there is reports from the EMTs that arrive on scene, the police, and in fact, an additional lay bystander witness. Now, obviously, as your honors are aware, there are some cases where we may want to doubt or question a bystander eyewitness testimony because there can be flaws in that, and you would weigh that in light of all the evidence. But in confirming and kind of, again, objectifying the evidence is there is a body-worn camera that shows that at least at the time when the EMTs arrive, she is directly essentially in the center of the road near those yellow lines. And by her own testimony, Ms. Jama said that she had not been able to move from the point of impact until when the first responders arrived. So I do believe that Judge Bryan made a clear record on that, that this follows under the case law and the rule for summary judgment that says, you know, it's Scott v. Harris is the case that says, you know, a party themselves cannot create an issue of fact by contradicting objective evidence. And in this case, the factual evidence from Ms. Jama is blatantly contradicted by the record. Your honors, the policy language is clear, the facts are undisputed, and Minnesota precedent is on point. And again, I would direct you to those cases cited in our brief, primarily Geyser, Short, and Allied. In this situation, the appellant was not occupying the vehicle and therefore is just simply not an insured under this policy. We ask that the district court's judgment be affirmed. Thank you for your time. Thank you for your argument. Thank you to both counsel. The case is submitted and the court will file a decision in due course. That concludes the argument session for this morning. The court will be in recess until 8.30 tomorrow.